The next case this morning is 522-0082, People v. David Beverly. Arguing for the defendant appellant is Mariah Shaver. Arguing for the state is Timothy Londrigan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning, sir. Ms. Shaver, if you're prepared and ready to begin, you may do so. Thank you, Your Honor. May it please the court, counsel. Good morning. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver and I represent David Beverly. Just two weeks after Kamari Ray Davis turned 15, he witnessed a shooting in the parking lot of the Oakwood Trace Apartments. Moments later, three police vehicles pulled up around Kamari and his friend. Two officers got out, pat them down, split them up and started to question them. Kamari told Officer DeLong he heard a gunshot, but did not see the shooting. In fact, nobody the police talked to when they canvassed the area admitted to seeing anything. Kamari went home and told his mother what he had actually seen. She told Kamari and the lawyer who later called about the case that he would not be getting involved. Over six and a half years later in the Champaign County Jail, Kamari ran into David Beverly, who had been found guilty of that shooting. David was in Champaign for the evidentiary hearing on his original post-conviction petition challenging that very conviction. It was only then that David discovered that Kamari, who was now 21, had actually seen the shooting. Kamari provided an affidavit indicating that David was not the shooter. David sought leave to file a successive post-conviction petition based on that affidavit. Because Kamari's affidavit was newly discovered, material, non-cumulative and likely to change the results on retrial, David's petition presented a colorable claim of actual innocence and he should have been granted leave to file. First, Kamari's affidavit was newly discovered. All that was known about Kamari at the time of trial was that he had told Officer DeLong that he had heard a gunshot but did not see the shooting. But his affidavit explains that he actually did see someone go up to Dreshana Caston's SUV and shoot one time into the passenger side before running off toward Bradley Avenue. Because Kamari's affidavit is a recantation of his previous statement, it is newly discovered. The fact that Kamari was identified in the discovery and an attorney tried to call him does not mean the evidence is not new. Even if defense counsel was the person who tried to call, counsel had no reason to believe Kamari had any additional information. And even if he had suspected there was, Kamari was 15 years old and his parents were not letting him talk to anybody. Because there is no amount of diligence that could have gotten that recantation prior to trial, the evidence is newly discovered. Second, Kamari's affidavit is material. Kamari saw David in the area earlier that day, but saw him leave before the shooting. He also saw the shooting and described the shooter implying that it was someone other than David. The only contested issue at trial was the shooter's identity. Kamari's testimony that David left before the shooting and was not the person he saw shoot into Dreshana's car would have been relevant to resolving that issue. Likewise, evidence that David was not the shooter and was not even there when Arsenio was shot is probative of David's innocence. Because Kamari's affidavit contained information that was relevant and probative of David's innocence, it was material. Third, the information in Kamari's affidavit is non-cumulative. Dreshana was the only occurrence witness who testified at trial and the only person who identified David as a shooter. Testimony from another witness who saw the shooting but who would not identify David as the shooter would have contradicted Dreshana's testimony and added to what the jury heard. So the proposed testimony in Kamari's affidavit was not cumulative. Fourth, Kamari's affidavit was conclusive. David did not make any admissions, there was no forensic evidence connecting him to the shooting, and he consistently denied being involved. Without any tangible evidence connecting him to the offense, David's conviction rests on the testimony of the state's only occurrence witness, Dreshana Gaston. Testimony from a second occurrence witness identifying someone other than David as the shooter places Dreshana's identification in a different light and undermines confidence in the verdict. Even without Kamari's testimony challenging Dreshana's identification, her credibility was called into question because she had motive to be dishonest. There was evidence suggesting both that her uncle Chris and her brother Robert were involved in the shooting and that she attempted to hide Chris's involvement from the police. And right before Arsenio was shot, Dreshana's brother Robert was standing by her car talking to Davionte Lindsay. Davionte Lindsay was associated with Rakeem's Vineyard. The state alleged that Arsenio's murder was part of an ongoing dispute over Rakeem's murder the year before. Dreshana told the police that she overheard Robert and Davionte talking about Rakeem's murder, but she denied that later. It was Davionte's behavior that made Dreshana so uncomfortable that she thought they needed to leave right away. When Dreshana went to back out of her parking space, her brother Robert was actually trying to get out of her moving car as if he knew what was about to happen. And Dreshana described Davionte as having his hood up while he was mean mugging her car and also described the shooter as having his hood up. And it was Davionte's girlfriend's apartment where the police found multiple black hoodies that they sent out for DNA testing, which did not come back connected to David. And that is also where they found ammunition consistent with the bullet that killed Arsenio. And the jury apparently questioned Dreshana's credibility even without Kamari's contradicting testimony. They deliberated for six hours and asked a question that would only be relevant if they were considering crediting David's testimony over Dreshana's. Kamari also testified that the shooter was wearing a blue hospital glove. David had a pair of blue gloves in his pocket when he was arrested. There was no gunshot residue on those gloves. And David testified he took them from the hospital that morning and often wore gloves to protect his eczema from irritants. Testimony from Kamari that he had seen David wearing blue gloves around three o'clock at a dice game in the area would have corroborated David's explanation for why he had the gloves and further undermined Dreshana's identification. Accordingly, Kamari's affidavit was conclusive because it places the trial evidence in a different light and undermines confidence in the verdict. The issue before this court is whether David should have been granted leave to file his successive petition based on Kamari's affidavit explaining that he actually did see the shooting and that David was not the shooter. Because David only raised an actual innocence claim, he did not need to establish cause and prejudice in order to file a successive petition. He only needed to establish a colorable claim of actual innocence. Because Kamari's proposed testimony is new, material, non-cumulative, and likely to change the result on retrial, David asked this court to reverse the trial court's ruling, denying him leave to file that petition and to remand her further proceedings. And he stands on the arguments presented in arguments two and three of his brief, separately asking that his sentence be reduced or the matter be remanded for a new sentencing hearing. Thank you. Thank you. Justice McKinney, Justice Vaughn, any questions? No questions. Okay. Ms. Shaver, you'll have time to rebuttal. Thank you, Your Honor. Mr. Londrigan. Thank you, Your Honors. May it please the court, counsel Timothy J. Londrigan for the Appellate Prosecutor's Office. In response to argument one, a successive post-conviction petition does require that cause and prejudice be established. Counsel's suggesting that that's not necessary if the petition alleges newly discovered evidence. I don't recall that being an argument made initially in the brief. However, I'm not aware of any authority that supports that position. Regardless, I don't think that the evidence is newly discovered as ruled upon by the trial court. When the defendant filed his initial post-conviction petition, he alleged countless or numerous issues where his trial counsel could have investigated numerous other witnesses. And this is true of this particular witness, Davis. This witness was known to the defendant. You can make the argument that his testimony might not have been known, but that doesn't forgive an investigation into it. Yes, this defendant was a minor, but he previously gave a statement to the police stating that he saw nothing. That was prior to his mother going home and having his mother tell him that she did not wish for him to participate or to testify in this matter. So he is changing his story. It's inconsistent with the position that he took only moments after being discovered by the police at the scene of this murder. And for those reasons, it is not newly discovered. In addition, his address was known. He was contacted by some counsel, whether it was defense counsel or some other counsel. So his whereabouts were known. His identity was known. Efforts could have been made in the initial post-conviction petition to add him as a potential witness, and it was not done at that time. Furthermore, as I've already mentioned, his testimony is inconsistent with that previously given so that it is not likely to have changed the outcome of this trial. As the Fourth District Appellate Court has found on two prior occasions after reviewing this matter, this is the third shot that this defendant has got at his conviction. The Fourth District has twice reviewed the evidence in this matter and found it substantial against defendant. Here we have this defendant approached an unarmed man in broad daylight who was seated in an SUV, pulled out a nine millimeter revolver and shot him in the chest. The victim's girlfriend seated right next to the victim, then drove the victim to the hospital and identified the defendant as the shooter to the police by pulling up a picture of the defendant, I believe on his Facebook post or Facebook page. This is a very clear identification. She testified at trial that she was familiar with this defendant having met him several times in the past, had a clear view of him at the time of the shooting. And the testimony of Mr. Davis would not have been sufficient to call into question the veracity of this testimony. And for those reasons, the trial court found that it was neither newly discovered nor sufficiently prejudicial to have changed the outcome of the trial. And since defendant is standing on their arguments in their brief with regard to issues two and three, the state will do so as well. If the court has no questions of the state with regard to issue one, I tender back to the defendant. Justice Bond, can I have any questions for Mr. Londergan? No questions. Okay, thank you, Mr. Londergan. Ms. Shaver. Thank you, your honor. First, in the brief, we did note that cause and prejudice is not required in both the opening and reply brief. Where a post-conviction petitioner asserts that a claim, in a claim that he is actually innocent, he is excused from showing cause and prejudice before being allowed leave to file. And he'd only show a colorable claim of actual innocence. And we cited to Ortiz and Edwards for that. And I believe People v. Robinson, the 2020 case by our Supreme Court also addressed that. Next, the fourth district's decision in the previous appeal does not impact whether or not David should have been granted leave to file a successive petition. The actual innocence claim regarding Kamari's affidavit was not part of the original petition. And that was not something the fourth district had the opportunity to consider in reaching its decision. The only issue before this court is whether the successive petition raised a colorable claim of actual innocence. The fourth district found in the decision regarding the original post-conviction petition, that even if the issue that should have been framed as actual innocence had been correctly framed, those claims would not have been successful but none of those affidavits were as conclusive as Kamari's affidavit is. The other potential witnesses saw people that they believed were the shooter leaving the area, but none of them actually saw the shooting. Whereas Kamari saw the person who shot Arsenio. Kamari's affidavit changes the game because it fills in the gaps the fourth district found prevented the other claims from being successful because he saw the shooter and could identify that it was not David. How do you address the state's position that this is not newly discovered? Your Honor, first, I apologize, Your Honor. First, a recantation, sorry, that's the word I was looking for, is newly discovered. I believe people, the Harper discusses that as cited in our briefs. And the fact that Kamari was listed in discovery and a lawyer tried to call him doesn't mean the evidence is new. He was 15 years old. His parents said that to the lawyer, the contact, and we don't know which lawyer it was, that he would not be talking to anybody. There's really nothing else the attorney could have done even if he had reason to think that Kamari knew something else. There's nothing else he could have done to got that statement. He can't just go stand outside Kamari's high school and wait for him to come out and try to question him. And again, pursuant to Harper, a recantation of her previous statement is newly discovered. And because there was no amount of diligence that could have gotten that recantation before trial, Kamari's statement just is newly discovered. Additionally, had the jury heard testimony completely as of Dreshana's identification, that raises the probability that it's more likely than not that no reasonable juror would have heard, would have convicted David. And that's discussed in People v. Robinson. Additionally, in Robinson, the court talked about credibility determinations. They're not relevant at the leap to file stage. That is only something that can be addressed at the third stage in any post-conviction proceeding. And when an affidavit conflicts with, but is not positively rebutted by the record, the state, in People v. Robinson, the state's witness identified the person who killed somebody, and there was conflicting information in the affidavit, but it wasn't positively rebutted. So when there is conflicting information, that's a reason to allow the petitioner to proceed with counsel on a culpable claim of actual innocence. Here, positive rebuttal in the record would have been if Kamari's affidavit claimed that he had seen somebody walk up to Arsenio with a knife and stab them. We know from the autopsy and the medical examiner and all that, that that's not possible. That would be a positively rebutted situation. But this, with the conflict, that's the kind of situation where it would be a he said, she said situation, and we cannot address credibility at the leap to file stage. That is only something that's relevant at the third stage of the proceeding. If the court has no further questions, David asks this court to reverse the order denying him leave to file a successive petition and to remand the matter for further proceeding. Thank you. Just, Mckamey, just Vaughn, any further questions?  No questions. Thank you. Ms. Shavard, thank you. Mr. Lonergan, thank you for your arguments this morning. The court will take this matter under consideration and issue its ruling in due course.